IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| THOMAS J. ALSTON, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-23-1176 |
| RESURGENT CAPITAL SERVICES, L.P., | * | |
| Defendant. | * | |

## MEMORANDUM OPINION AND ORDER

Frequent-filer Thomas J. Alston alleges that Resurgent Capital Services, L.P. ("RCS") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*; the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law § 14-202; and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301. ECF 2. RCS moved to dismiss the complaint for lack of personal jurisdiction. ECF 7. In response, Alston moved for leave to file an amended complaint. ECF 10. RCS opposed the motion. ECF 11. Alston replied, ECF 16, and moved for leave to file a second amended complaint, ECF 17. RCS opposed that motion too. ECF 18. No hearing is necessary. *See* Loc. R. 105.6. For the following reasons, Alston's motion for leave to file the proposed second amended complaint is granted. RCS's motion to dismiss and Alston's motion for leave to file the proposed first amended complaint are denied as moot.

Courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "A motion to amend should only be denied when 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile.'" *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 217–18 (4th Cir. 2019) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)).

RCS argues that amendment would be futile because none of Alston's complaints alleges facts sufficient to establish personal jurisdiction and survive RCS's pending Rule 12(b)(2) motion to dismiss. ECF 18, at 5. A Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction challenges the propriety of a particular court's exercise of power over a particular defendant. *See Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 131 (4th Cir. 2020). "[T]he district court must determine whether the facts proffered by the party asserting jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.,* 935 F.3d 211, 226 (4th Cir. 2019). However, "a court may look beyond the complaint to affidavits and exhibits in order to assure itself of personal jurisdiction." *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350 (4th Cir. 2020) (citing *Grayson v. Anderson*, 816 F.3d 262, 269 (4th Cir. 2016)). Throughout, the court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inference for the existence of jurisdiction." *Id.* (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). Nevertheless, "[w]hen personal jurisdiction is addressed under Rule 12(b)(2) without an evidentiary hearing, the party asserting jurisdiction has the burden of establishing a *prima facie* case of jurisdiction." *Hawkins*, 935 F.3d at 226.

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. *See* Fed. R. Civ. P. 4(k)(1)(A); *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997). "[F]or a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

Maryland's long-arm statute, Md. Code Ann., Cts. & Jud. Proc. § 6-103(b), reaches as far as the Due Process Clause permits, *see Carefirst*, 334 F.3d at 396 (citing *Mohamed v. Michael*, 370 A.2d 551, 553 (Md. 1977)).  Even so, the Maryland Supreme Court has clarified that it is not "permissible to simply dispense with analysis under the long-arm statute."  *Mackey v. Compass Mktg., Inc.*, 892 A.2d 479, 493 n.6 (Md. 2006).  The fact that the long-arm statute extends as far as due process permits does not mean that the inquiry has only one step.  Rather, it means that at the first step—interpreting the statute—"to the extent that a defendant's activities are covered by the statutory language, the reach of the statute extends to the outermost boundaries of the due process clause."  *Dring v. Sullivan*, 423 F. Supp. 2d 540, 545 (D. Md. 2006) (quoting *Joseph M. Coleman & Assocs., Ltd. v. Colonial Metals*, 887 F. Supp. 116, 118 n.2 (D. Md. 1995)).

Alston's proposed second amended complaint includes factual allegations sufficient to establish personal jurisdiction under Maryland's long-arm statute.  The statute limits specific jurisdiction to cases where the cause of action "aris[es] from any act enumerated in the statute itself."  Md. Code Ann., Cts. & Jud. Proc. § 6-103(a).  As relevant here, the statute authorizes jurisdiction over a party who directly or by an agent "(1) [t]ransacts any business or performs any character of work or service in the State" or "(4) [c]auses tortious injury in the State . . . by an act or omission outside the State," provided that the party "regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State."  *Id*. § 6-103(b).

Alston alleges that RCS unlawfully attempted to collect debt from him by mailing dunning notices to him at his address in Maryland and sending him emails he received in Maryland.  ECF 17-1, ¶¶ 15–20.  Those allegations satisfy the first and fourth prongs of the long-arm statute.  As to the first: "An absence of physical contacts will not defeat the exercise of personal jurisdiction

[under § 6-103(b)(1)] where a commercial actor's efforts have been 'purposefully directed' toward residents of another state." *Sleph v. Radtke*, 545 A.2d 111, 116 (Md. Ct. Spec. App. 1988) (quoting *Mohamed*, 370 A.2d at 554). That is the case on the facts alleged here. As Alston tells it, RCS attempted to collect a debt from him while he was in Maryland, believing he resided in Maryland—purposefully directing its debt-collection efforts form out of state towards a resident of the state. ECF 17-1, ¶¶ 15–20, 28. As to the fourth: An injury caused by a violation of a statute counts as a "tortious injury." *Green v. N.B.S., Inc.*, 952 A.2d 364, 371 (Md. Ct. Spec. App. 2008). So Alston's claims to have been injured by RCS's violations of the four statutes at issue here suffice to establish that component of personal jurisdiction. Alston's proposed second amended complaint also satisfies the second element of § 6-103(b)(4), because he alleges that RCS regularly collects and attempts to collect debts in Maryland. ECF 17-1, ¶¶ 4–7.

That leaves the due process analysis. The exercise of personal jurisdiction over a nonresident defendant accords with due process if the court has either general jurisdiction or specific jurisdiction. *See Carefirst*, 334 F.3d at 397. A federal district court has general jurisdiction over a defendant if the defendant's conduct in the state is not the basis for the suit, *see id.*, and the defendant's connections to the state are "so constant and pervasive as to render it essentially at home in the forum State," *Fidrych*, 952 F.3d at 132 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014)). By contrast, a federal district court has specific jurisdiction over a nonresident defendant if "the defendant has purposefully availed itself of the privilege of conducting activities in the state," "the plaintiff['s] claims arise out of those activities directed at the state," and "the exercise of personal jurisdiction would be constitutionally reasonable." *Carefirst*, 334 F.3d at 397.

Alston has not alleged that the Court has general jurisdiction over RCS, a Delaware corporation headquartered in South Carolina. *See* ECF 17-1, ¶ 4; ECF 7-2, at 2. He alleges that RCS is a licensed collection agency in Maryland and that it has sued debtors in state courts. ECF 17-1, ¶¶ 4–7. These are not the sort of "constant and pervasive" contacts sufficient to make RCS at home in Maryland, because they do not "distinguish [RCS's] relationship with [Maryland] from its relationship with any of the other states where it does business but where it is not incorporated or headquartered." *See Fidrych*, 952 F.3d at 132, 134.

However, Alston has alleged in the second amended complaint that the Court has specific jurisdiction over RCS. First, RCS "purposefully availed itself of the privilege of conducting activities in the forum by directing debt collection activities" at Alston in Maryland. *See Chartier v. M. Richard Epps, P.C.*, No. ELH-14-1071, 2014 WL 4748629, at *9 (D. Md. Sept. 23, 2014). "Where an alleged debtor is located in a jurisdiction and receives documents from a person purporting to be a debt collector located elsewhere, and the transmittal of those documents is claimed to have violated the [FDCPA], suits may be brought where the debtor . . . receive[s] the communications." *Id.* (quoting *Sluys v. Hand*, 831 F. Supp. 321, 324 (S.D.N.Y. 1993)). In the second amended complaint, Alston alleges that RCS sent multiple debt-collection letters to his residence in Maryland, which he received in Maryland. ECF 17-1, ¶¶ 15–16, 19. He further alleges that RCS sent him at least 11 debt-collection emails in the belief that he resided in Maryland, which he received in Maryland. *Id.* ¶¶ 15, 17, 20. In consequence, the factual allegations in the second amended complaint make a *prima facie* case for purposeful availment.

Second, most of Alston's claims arise out of RCS's contacts with Maryland. He alleges that these very contacts violated the FDCPA, MCDCA, and the MCPA. *Id.* ¶¶ 56, 63–65, 68. The rest of his claims derive from the ensuing dispute about the status of this debt. *Id.* ¶¶ 27–52.

Third, the assertion of personal jurisdiction over RCS would be constitutionally reasonable. The analysis centers on five factors:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 279 (4th Cir. 2009). RCS does not argue that it would be burdensome to litigate in Maryland, and Alston alleges that RCS litigates in the state regularly, ECF 17-1, ¶ 5. Like every other state, Maryland "has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quotation omitted). Because Maryland is one of the states in which Alston has a residence, his interest in obtaining relief would be served well in the state. The other factors pose no distinctive barriers here. Because Alston's second amended complaint sufficiently alleges personal jurisdiction over RCS, amendment would not be futile.[1]

---

[1] Alston also suggests that this Court has personal jurisdiction over RCS because Alston is a Maryland domiciliary and RCS reported inaccurate credit information about him to multiple credit reporting agencies, injuring him in Maryland. ECF 17, ¶ 28; ECF 16, at 4–5. That contention has reignited a much-litigated dispute over whether Alston is domiciled in Maryland or in Washington, D.C. ECF 18, at 5–9. Alston suggests that the answer is both. ECF 17-1, ¶ 2. As a matter of law, it can only be one or the other. *Hearn v. Edgy Bees Inc.*, No. DKC-21-2259, 2023 WL 3074638, at *10 (D. Md. Apr. 25, 2023) (citing *C.I.R. v. Swent*, 155 F.2d 513, 515 (4th Cir. 1946)). But this Court need not determine Alston's domicile to rule on the pending motions. Even if Alston is domiciled in Maryland, this theory of personal jurisdiction would fail because Alston has not alleged that RCS transacted with the credit reporting agencies from Maryland, that the agencies are located in Maryland, or that the interaction had any other relationship with Maryland. *See Cole v. Cap. One*, No. GJH-15-1121, 2016 WL 2621950, at *3 (D. Md. May 5, 2016) (citing *Zellerino v. Roosen*, 118 F. Supp. 3d 946, 952 (E.D. Mich. 2015)). "To conclude otherwise would be to 'improperly attribute[ ] a plaintiff's forum connections to the defendant and makes those connections decisive in the jurisdictional analysis.'" *Id.* (quoting *Walden v. Fiore*, 571 U.S. 277, 289 (2014)) (alteration in *Cole*).

RCS also argues that Alston should be denied leave to amend because his proposed amendments are in bad faith. ECF 18, at 5–7. For now, the Court does not reach that conclusion. A motion for leave to amend the complaint is in bad faith if it is for an improper purpose, *Peamon v. Verizon Corp.*, 581 F. App'x 291, 292 (4th Cir. 2014), or follows multiple dismissals for pleading failures, *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, 707 F.3d 451, 461 (4th Cir. 2013). Alston amended the complaint to remedy the defects RCS identified in its motion to dismiss and its opposition to Alston's motion for leave to file a first amended complaint. ECF 17, ¶¶ 2–5. That purpose is proper. Although this is Alston's second motion for leave to amend, it is not his fourth. *Cf. Nathan*, 707 F.3d at 461 (denying fourth motion for leave to amend "[i]n n view of the multiple opportunities [the plaintiff] has been afforded to correct his pleading deficiencies"). Nor does it follow any actual dismissal of his claims. *Cf. id.* And he has moved to address the deficiencies in the complaint within a reasonable time of the defendant putting him on notice of them. *See id*.

RCS contends that Alston's actual purpose for seeking leave to amend is to manipulate the jurisdiction of the federal courts and drive up the costs of defending against cases like this one. ECF 18, at 5–7. In support of that argument, RCS points to a long series of cases in which Alston has made shifting, evasive, and seemingly contradictory claims about whether he is a domiciliary of Maryland, Washington, D.C., or both. ECF 18-1; 18-2; 18-3; 18-4; 18-5; 18-6. The Court, too, has serious concerns about Alston's shifting representations to courts about his domicile. But because Alston's domicile is not dispositive of the personal jurisdiction question in this case, the Court will not find he has acted in bad faith in seeking leave to amend.

In sum, "while Plaintiff['s] proposed second amended complaint alleges *additional facts* in support of [his] claim, it raises no new legal theories, does not seek to remedy repeated pleading

deficiencies, and is not for an improper purpose." *Wilkins v. Wells Fargo Bank, N.A.*, 320 F.R.D. 125, 128 (E.D. Va. 2017) (emphasis in original). Accordingly, the Court concludes that Alston's proposal to amend the complaint is not in bad faith.

For the reasons above, Alston's motion for leave to file the second amended complaint, ECF 17, is granted. Alston's motion for leave to file the first amended complaint, ECF 10, is denied as moot. RCS's motion to dismiss the original complaint, ECF 7, also is denied as moot. The Clerk shall mail Alston a copy of this Order.

Date:  December 27, 2023

                                                  Deborah L. Boardman
                                                  United States District Judge